JOURNAL ENTRY and OPINION
{¶ 1} The State of Ohio appeals the trial court's decision granting defendant-appellee's, Joshua Jones ("Jones"), motion to suppress eyewitness identification. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2003, Jones was charged with aggravated robbery with firearm specifications and having a weapon while under disability.[1] Jones filed a motion to suppress eyewitness identification, claiming that the photo array shown to the victim was unreasonably suggestive and unreliable. The trial court conducted a hearing at which the following evidence was presented.
 {¶ 3} On September 18, 2002, the victim, LaTonya Sumpter ("Sumpter"), was robbed at gunpoint by two young men. On September 22, the police informed her that they had apprehended a suspect and suggested she file a police report. Later that day, Sumpter reported to police that two young black males had robbed her at gunpoint. She described the male who held the gun as having black hair, brown eyes, "approx. 17 years old, gray big sweat jacket, white t-shirt, blue baggy jeans, short haircut, tan complexion, approx. 5'7", and 150-160 lb." Sumpter described the second male as wearing a dark orange or peach colored sweatshirt and tan pants. She further described him as "slim, around 5'6", around 17 years old, dark brown skin."
 {¶ 4} The report was assigned to Detective Tammy Duke ("Duke") who was already investigating two other robberies that occurred the same morning in the same area. Sumpter met with Duke on September 29 and reviewed a photo array consisting of six photos of young African-American males. Sumpter testified that Duke advised her that the suspect was in the photo array. Sumpter identified Jones as the person who robbed her and then asked Duke whether she had chosen the right person. Duke neither confirmed nor denied Sumpter's identification.
 {¶ 5} The trial court granted Jones' motion to suppress, finding that the photo identification procedure was unreasonably suggestive because the array was created prior to Sumpter's giving the police a description of the suspect. The court further found that the detective's statement that the suspect's photo was in the array was also suggestive. The State appeals, raising one assignment of error, in which it argues that the court erred when it granted Jones' motion to suppress.
 {¶ 6} The scope of our review regarding a motion to suppress was set forth by this court in State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172, as follows:
"In a motion to suppress, the trial court assumes the role of trier offact and is in the best position to resolve questions of fact andevaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250,63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to acceptthose findings of fact if supported by competent, credible evidence. SeeState v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However,without deference to the trial court's conclusion, it must be determinedindependently whether, as a matter of law, the facts meet the appropriatelegal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908."
 {¶ 7} Courts apply a two-prong test in determining the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this burden is met, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Page, Cuyahoga App. No. 84341, 2005-Ohio-1493. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Willis (1997),120 Ohio App.3d 320, 324-325, 697 N.E.2d 1072, citing Manson v.Brathwaite (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243.
 {¶ 8} When a motion to suppress concerns photo identification procedures, the court must determine whether the photos or procedures used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable identification. Page, supra at ¶ 13, citingSimmons v. United States (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247,88 S. Ct. 967.
 {¶ 9} The Supreme Court has set forth the following factors to consider regarding potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, the witness at the confrontation, and the length of time between the crime and the confrontation * * *." Neil v. Biggers (1972),409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 93 S. Ct. 375. The court must review these factors under the totality of the circumstances. Id. Furthermore, "although the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification." Page, supra at ¶ 14, citing State v. Merrill
(1984), 22 Ohio App.3d 119, 121, 489 N.E.2d 1057; State v. Moody
(1978) 55 Ohio St.2d 64, 67, 377 N.E.2d 1008.
 {¶ 10} In the instant case, our first step is to determine whether Jones has established that the identification procedure was unreasonably suggestive. On its face, the array contains six photos of African-American males of similar age with similar facial features, skin tone, and hair style. We find nothing in the array that distinguishes Jones from the others.
 {¶ 11} Nevertheless, Jones contends that the array was unreasonably suggestive because it was created prior to Sumpter's giving police a description of the robbers. He also argues that the identification procedure was suggestive because Sumpter was advised prior to making the identification that the suspect was in the photo array.
 {¶ 12} Thus, the issues presented before this court are (1) whether a photo array is unreasonably suggestive when it is based on the detective's suspicion rather than the victim's description, and (2) whether the procedure is unreasonably suggestive when the victim is told that the victim is told that the suspect's photo is in the array.
 {¶ 13} The testimony established that the photo array was created based on the inclusion of a suspect whom the detective thought Sumpter would choose. Det. Duke testified that another juvenile suspect, D.H., had already been arrested for two other robberies that occurred on September 18, in the same area, about the same time. Duke expected Sumpter to identify D.H., based upon the similarity of the crimes. Therefore, Duke used the photo array which included D.H.'s photo and which the victims of the other robberies viewed. Jones' photo was in the array because he resembled D.H. However, Sumpter identified Jones, not D.H.
 {¶ 14} The trial court concluded that D.H. definitely resembled Jones, stating, "[T]hey both certainly have resemblances." It was mere coincidence that Jones was in the photo array; however, it does not rise to the level of being unreasonably suggestive.
 {¶ 15} Therefore, we hold that when a photo array is created by police prior to the victim's giving a description of the suspect, the array is not unreasonably suggestive, as long as the array contains individuals with features similar to the suspect.
 {¶ 16} We now turn to the issue of whether the detective's statement was unreasonably suggestive. Sumpter testified that prior to making an identification, she was advised by Det. Duke that the suspect's photo was in the array. Although Duke testified that she did not indicate to Sumpter who she believed the suspect was, she did admit that she may have advised Sumpter that the suspect was in the photo array. The trial court is in the suspect was in the photo array. The trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. Clay, supra.
 {¶ 17} We find that the detective's statement rendered the identification procedure unduly suggestive. Sumpter knew that she had to choose one of the men in the photo array, regardless of certainty, because she was told that the suspect was in the array. Although we note that Duke was surprised when Sumpter identified Jones, the fact that Sumpter knew one of the six males in the photo array was the robber made the identification procedure suggestive.
 {¶ 18} Having found that Jones satisfied his burden of demonstrating that the identification procedure was suggestive, we must determine whether the identification was reliable despite the suggestive procedure. Willis, supra. In order to determine the reliability of the identification, we must consider the factors set forth in Biggers,
supra.
 {¶ 19} Reviewing these factors, we cannot say that Sumpter's identification was reliable. Sumpter testified that the robbery occurred very quickly in the early morning hours while it was still a little dark outside. She further testified that she did not focus on the individual robbing her, but instead she focused on the gun pointed at her. Although she was able to give police a description four days after the robbery, she described the two males similarly except for the tone of their skin color.
 {¶ 20} The lack of certainty Sumpter demonstrated when making the photo the photo array identification is the strongest indication of unreliability. First, Sumpter made the identification eleven days after the robbery occurred. Also, after she identified Jones as the person who robbed her, she asked the detective to confirm that she identified the right person. Sumpter testified, "[A]nd I said, okay, but is it possible that you [Duke] could give me the answer, because I don't want to make no mistake of picking out the person. Is it possible you [Duke] could show me who you all actually had a run in." She further testified that it was fair to say that she was asking Duke those questions because she was a little doubtful about whether she made the correct identification.
 {¶ 21} Additionally, Sumpter expressed some doubt at the suppression hearing regarding the identification. Sumpter stated to police that the man who robbed her had light brown skin, but when she observed Jones in the courtroom, she did not describe his skin color as light brown.
 {¶ 22} Based on the totality of the circumstances, we find that the identification was unreliable and the identification procedure was impermissibly suggestive as to give rise to a substantial likelihood of misidentification. See Willis, supra; Page, supra. Therefore, we find that the trial court properly granted Jones' motion to suppress.
 {¶ 23} Accordingly, the State's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J. and Kilbane, J. concur.
[1] This case was initially brought before the juvenile court because Jones was a juvenile. He was subsequently bound over to the common pleas court.